UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARDO JOSE FIELDS,

      Plaintiff,

v.

                                 Case No. 10-10079
                                 Honorable Patrick J. Duggan

RAINBOW REHABILITATION
CENTER, INC., JULIE WIGAND,
and TIFFANY ALEXANDER,

      Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Leonardo Jose Fields ("Plaintiff") filed this *pro se* lawsuit against Defendants on January 8, 2010, alleging violations of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3 ("Title VII"). Plaintiff filed an amended complaint on January 12, 2010, and a second amended complaint on May 12, 2010. Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed February 28, 2011. The motion has been fully briefed.[1] On March 25, 2011, this Court issued a notice informing the parties that it

---

[1] Plaintiff filed a response brief on March 23, 2011. Defendants filed a reply brief on April 4, 2011. With this Court's permission, Plaintiff also filed a sur-reply brief on April 25, 2011. On April 27, 2011, Defendants filed a motion for leave of court to file a reply to Plaintiff's sur-reply and a copy of their reply. As the Court believes that it does not need further argument from Defendants and their additional brief does not identify flaws in Plaintiff's sur-reply that the Court has not independently detected, it is denying

(continued...)

is dispensing with oral argument with respect to Defendants' motion pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons that follow, the Court grants Defendants' motion.

**I.      Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  Once the movant meets this burden, the nonmoving party must present evidence demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.  This evidence must consist of "particular parts of materials in the record" such as depositions, documents, or affidavits, or by "showing that the materials cited do not

---

[1](...continued)
their motion for leave to file a reply brief to Plaintiff's sur-reply.

establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When deciding a Rule 56 motion, the court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255, 106 S. Ct. at 2513.

## II. Factual and Procedural Background

Defendant Rainbow Rehabilitation Center, Inc. ("Rainbow") provides rehabilitation services to individuals with neurological impairment. In 1990, Plaintiff began working at Rainbow's Paint Creek facility as a Rehabilitation Assistant responsible for the care of Rainbow's "clients" (i.e., patients). During Plaintiff's employment, Sherri McDaniel was (and still is) Rainbow's Chief Operating Officer and Executive Vice President of Human Resources. Defendant Julie Wigand ("Wigand") became Plaintiff's supervisor at the Paint Creek facility in November 2007. Defendant Tiffany Alexander, n/k/a Daniels ("Alexander"), is Rainbow's Human Resources Manager.

Plaintiff is a Jehovah's Witness. In or around 1994, Plaintiff requested that he not be scheduled to work on Sundays, Tuesdays, and Thursdays as an accommodation for his religious beliefs. Plaintiff also needed those days off to care for his son from a previous marriage, as those were the days that Plaintiff had custody of the child. According to Plaintiff, Defendants accommodated his request until June 2008.

Prior to June 2008, on November 17 or 18, 2007, Plaintiff filed an internal grievance letter complaining that on several occasions employees were not there to

relieve him when his shift ended, thereby requiring Plaintiff to stay beyond his scheduled shift. (Defs.' Mot. Ex. 6.) Plaintiff filed this grievance in response to being disciplined for failing on November 17, 2007, ". . . to stay when mandated until appropriate staffing arrived and le[aving] the facility without permission from your RPM." (*Id.* Ex. 5.) Plaintiff received a 2-day disciplinary suspension and a final written warning as a result of his actions. (*Id.*) In his grievance, Plaintiff indicated that after waiting an hour and a half for someone to relieve him, he had to leave to be home to receive his son. (*Id.* Ex. 6.) In response to his grievance, a review board reduced Plaintiff's suspension to one day, but retained the final written warning. (*Id.* Ex. 7.)

Apparently Plaintiff was not the only Paint Creek employee who was left without a replacement when his shifts ended and this had become a common problem at the facility. According to Wigand, who had assumed the responsibilities for managing the Paint Creek facility in November 2007, the facility "began to have problems with employees not showing up for work on time or not showing up at all and few employees volunteering for work on the weekends leaving the shift short." (Defs.' Mot. Ex. 2 ¶ 10.) Wigand explains that "[t]his became a scheduling nightmare and a problem for staff employees like Mr. Fields whose shift had ended, but it increased costs, resulted in overtime being paid, and the over-all operation costs to increase." (*Id.*)

McDaniel therefore directed Wigand "to ensure that all scheduling of Rehabilitation Assistan[t]s was done fairly and equitably using the 'fair share weekend' policy as a template." (Defs.' Mot. Ex. 1 ¶ 19.) Rainbow's training documents describe a

4

"fair share of weekends" as "a mathematical calculation of the number of weekend shifts divided by the number of regular staff." (*Id*. Ex. 14.) The quotient is the number of weekends that each staff member must work. (*Id*.)

As a result of the fair share weekend policy, Plaintiff was scheduled to work on Sunday June 23, 2008. Plaintiff traded shifts with another employee to avoid working on his accommodated day. Plaintiff was again scheduled to work on Sunday July 6, 2008. Plaintiff brought the conflict with his accommodation to Wigand's attention, who then scheduled a meeting between Plaintiff, herself, and Alexander. Eventually a trade shift was arranged so Plaintiff did not work on July 6.

On August 22, 2008, following Plaintiff's meeting with Wigand and Alexander, Alexander sent a memo to Plaintiff advising Plaintiff that he was required to work his fair share of weekends and his "scheduled shifts (unless other arrangements are made, as you have been doing." (Defs.' Mot. Ex. 11.) Alexander further advised Plaintiff: "You can make schedule change requests, and Rainbow will determine if your request can be accommodated, but you may not dictate to us what your schedule will be." (*Id*.) Thereafter, Plaintiff was never scheduled to work on an accommodated day. (*Id*. Ex. 1 ¶ 25; Ex. 2 ¶ 15; Ex. 4 at 298.)

On November 10, 2008, Plaintiff asked Wigand to add Wednesdays as one of his accommodated days so he could attend his bible study class which had been moved to that day. The request was approved.

On December 23, 2008, Plaintiff received a disciplinary suspension of three days

5

and last and final written warning for failing to properly supervise a client assigned to him by leaving the client behind at the facility with no supervision. (Defs.' Mot. Ex. 2 ¶ 18; Ex. 17.) On January 19, 2009, due to his failure to attend a mandatory CPR/FA class on January 13, 2009, Plaintiff was issued a "last and final written warning with a suspension until you complete your recertification training requirements." (*Id*. Ex. 17.) While January 13 was a Tuesday– one of Plaintiff's accommodated days– he had selected the date of the class with Wigand. (Ex 4. at 323.) In a subsequent discussion with Wigand, Plaintiff acknowledged that he was aware of the meeting but that he got stuck with his son at school. (Ex. 4 at 324.)

Plaintiff also failed to attend a mandatory staff meeting on January 27, 2009, a Thursday. As the manager of the Paint Creek facility, Wigand was required to hold monthly staff meetings and additional meetings as deemed necessary for training, problem resolution, or certification. (Defs.' Mot. Ex. 2 ¶ 6.) On or about January 2, 2009, Wigand posted the mandatory staff meeting schedule for the year. (*Id*.; Ex. 9.) The following note is contained at the bottom of the schedule:

> Meetings will only be offered once a month in 2009. All staff members are expected to attend each staff meeting. If you are unable to make it for any reason, you MUST inform Julie in advance.

(*Id*.) According to McDaniel, Wigand, and Alexander, when a Rehabilitation Assistant is not able to attend a scheduled monthly meeting or training, Rainbow policy requires the rehabilitation assistant to inform his or her supervisor prior to the meeting or training session and an alternative one-on-one session is arranged. (Defs.' Mot. Ex. 1 ¶ 12; Ex. 2

6

¶ 6; Ex. 3 ¶ 8.)

Plaintiff in fact had arranged one-on-one meetings on several occasions when he was unable to attend a monthly meeting or scheduled certification or training. (*Id*. Ex. 2 ¶ 8; Ex. 3 ¶ 10.) On other occasions, however, Plaintiff did not request alternative one-on-one training and attended monthly meetings even when they occurred on his accommodated days. (*Id*.; *see also* Ex. 16.)

As a result of his failure to attend the January 27, 2009 staff meeting and his prior policy violations, Rainbow terminated Plaintiff's employment on February 24, 2009. (Defs.' Mot. Ex. 19.) Plaintiff filed this lawsuit in response.

In his Second Amended Complaint, Plaintiff alleges that Defendants violated Title VII by failing to accommodate his religious beliefs and by retaliating against him for filing his internal grievance complaining about Defendants' failure to accommodate his religious beliefs. As indicated earlier, Defendants have moved for summary judgment with respect to Plaintiff's claims.

In their motion, Defendants argue that Plaintiff cannot demonstrate that he was discharged for failing to comply with employment requirements that conflicted with his religious beliefs. Defendants contend that Rainbow always accommodated Plaintiff's religious beliefs when those beliefs conflicted with the requirements of his job. With respect to Plaintiff's retaliation claim, Defendants argue that Plaintiff fails to present evidence establishing a causal connection between his November 2007 internal grievance letter and his termination. Finally, Defendants claim that McDaniels made the decision to

7

terminate Plaintiff without input from Wigand or Alexander and therefore liability fails to attach to Wigand and Alexander under Title VII.

## III. Applicable Law and Analysis

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of the employee's religion. 42 U.S.C. § 2000e-2(a)(1). Specifically, the statute provides that it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." *Id*.

The term "religion" as used within Title VII includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "This definition imposes upon employers a 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'" *Reed v. UAW*, 569 F.3d 576, 579 (6th Cir. 2009) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 S. Ct. 2264 (1977)).

Pursuant to Sixth Circuit precedent, "'the analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination.'" *Reed*, 569 F.3d at 579-80 (quoting *Tepper v. Potter*, 505 F.3d 514 (6th Cir. 2007)). The employee bears the burden of establishing a prima facie

8

case of religious discrimination. *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987). To satisfy this burden, the employee must show that: "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Id.* If the employee satisfies his or her prima facie case, the employer has the burden "to prove that it cannot reasonably accommodate the employee without undue hardship." *Id.*

Defendants do not dispute Plaintiff's ability to satisfy the first and second prongs of his prima facie case. They challenge his ability to demonstrate the last prong, only. Viewing the evidence presented in a light most favorable to Plaintiff, this Court agrees that Plaintiff fails to present evidence to raise a genuine issue of fact as to whether Defendants discharged or disciplined him for failing to comply with employment requirement(s) that conflicted with his religious beliefs.

With respect to Defendants' discipline of Plaintiff on January 19, 2009, while the CPR/FA training that Plaintiff failed to attend was scheduled on one of Plaintiff's requested days off, he jointly chose that date with Wigand.[2] Moreover, in subsequent communications with Wigand, Plaintiff did not claim that he failed to attend the training due to a conflict with his religious beliefs. Instead, he indicated that he failed to attend

---

[2]Plaintiff asserts that he did not realize January 19 was a Tuesday and that he did not believe Wigand would propose a day she knew to be one of Plaintiff's accommodation days. As the evidence indicates, however, Plaintiff attended meetings and trainings on occasion despite the fact that they fell on his accommodation days.

9

because he had been stuck at school with his son.[3]

Defendants did not terminate Plaintiff simply for failing to attend the January 27, 2009 staff meeting which occurred on one of Plaintiff's accommodation days. Rather Defendants terminated Plaintiff because he failed to attend the meeting *and* failed to contact Wigand and arrange alternative one-one-one training. The ability to arrange one-on-one training as an alternative to attending meetings scheduled on one of his accommodated days means, in this Court view, that Plaintiff's religious beliefs did not conflict with an employment requirement. However, even if Plaintiff established a prima case of discrimination, the evidence shows that Defendants in fact accommodated Plaintiff's religious beliefs throughout his employment by not scheduling him on the three and then four days each week that he sought off, allowing him to trade shifts when he was scheduled (whether intentionally or unintentionally) on one of his accommodation days, and permitting him to arrange a one-on-one meeting or training session when such meetings or sessions were scheduled on his accommodation days.

Plaintiff argues that Defendants should not have scheduled staff meetings and training and certification sessions on days that they knew were his accommodation days. In this Court's view, however, it is not reasonable to expect an employer to schedule staff meetings to avoid one employee's accommodated days, particularly where the employee

---

[3]Similarly with respect to the disciplinary action against Plaintiff on November 19, 2007, Plaintiff's internal grievance reflects that his having to stay beyond his shift and into Sunday did not conflict with his religious beliefs. Rather it conflicted with his inability to get home to receive his son. (Defs.' Mot. Ex. 6.)

is not able to work four of seven days per week and one of the three days the employee is able to work is a Saturday when the employer already has difficulty getting employers to work.  Moreover, Defendants establish that Plaintiff attended meetings and training sessions in the past despite the fact that they were held on one of his accommodated days.  Finally, Defendants offered Plaintiff a reasonable alternative to attending those meetings and sessions on his accommodation days, as well as when he was scheduled to work on one of those days, in that they allowed him to arrange alternative one-on-one meetings and/or sessions and to trade shifts with other employees.

Relying on an unpublished opinion from the District Court for the Western District of Pennsylvania, *EEOC v. Aldi*, No. 06-01210, 2008 WL 859249 (Mar. 27, 2008), Plaintiff argues that allowing employees to swap shifts is not a reasonable accommodation.  In *Aldi*, the employee refused to work on Sundays based on her religious beliefs and was terminated for failing to report to work for her scheduled Sunday shifts.  The district court held that her employer failed to provide a reasonable accommodation by maintaining a voluntary shift swap because the employer did not take any action to publicize or promote the policy or otherwise provide means for employees to effectuate a shift swap and because this employee believed that it is a sin to ask another person to work on Sundays.  *Aldi*, 2008 WL 859249, at *12-13; *see also Pyro Mining Co.*, 827 F.2d at 1088 (finding that the employer failed to meet its obligations under Title VII to an employee who believed that it is a sin to work on Sundays and to ask someone to work for him on Sundays).

In the present case, however, there is no evidence that Plaintiff believed that it is a sin to ask another person to work on Sundays (in fact, apparently, he did so on occasion) or that he informed Defendants of such a belief. As the Sixth Circuit indicated in *Pyro Mining Company*: "The reasonableness of an employer's attempt at accommodation cannot be determined in a vacuum. Instead, it must be determined on a case-by-case basis; what may be a reasonable accommodation for one employee may not be reasonable for another." 827 F.2d at 1085. For that reason, "the very nature of the inquiry on a failure to accommodate claim under Title VII does not lend itself to the application of a hard and fast rule . . . ." *Aldi*, 2008 WL 859249, at *9. Thus while the courts in *Aldi* and *Pyro Mining Company* concluded that the employer failed to offer a reasonable accommodation by allowing the employees to swap shifts with other employees, the holdings do not present a "hard and fast rule" applicable to factually distinguishable cases. In fact, the Sixth Circuit indicated in *Pyro Mining Company*: "We think it clear that if [the employee] had no religious qualms about asking others to work the Sundays he was scheduled to work, then Pyro's proposed accommodation would have been reasonable." *Id*. at *13.

The Court therefore concludes that Plaintiff fails to establish a prima facie of religious discrimination or failure to accommodate his religious beliefs.

Plaintiff also alleges that Defendants retaliated against him for filing an internal grievance in November 2007. To establish a claim of retaliatory discrimination, a plaintiff first must establish a prima facie case by showing that: "1) the plaintiff engaged

12

in an activity protected by Title VII; 2) the exercise of the plaintiff's civil rights was known to the defendant; 3) the defendant thereafter undertook an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action." *Virts v. Consol. Freightways Corp. of Delaware*, 285 F.3d 508, 521 (6th Cir. 2002) (citations omitted).

Plaintiff claims that Defendants retaliated against him for submitting his November 2007 internal grievance when they scheduled him to work shifts on Sunday June 29 and Sunday July 6, 2008, and scheduled staff meetings on the days he requested to not work due to his religious beliefs. With respect to the Sunday shifts, Plaintiff did not work those shifts as he was able to trade them with other employees. The Court therefore does not believe that he suffered an adverse employment action. Even if he did, however, Plaintiff offers no evidence to establish a causal connection between his internal grievance letter and his two scheduled Sunday shifts.[4] While Plaintiff was disciplined for not attending the staff meeting and training session scheduled on his accommodated days, he likewise presents no evidence suggesting a causal connection between the scheduling of the meeting and session and his grievance more than a year earlier. In short, Plaintiff fails to establish a prima facie claim of retaliation.

**IV.    Conclusion**

---

[4]Although it is not necessary for the Court to reach this issue, the evidence demonstrates that Defendants had a legitimate, non-retaliatory reason for enforcing the fair share weekend policy which resulted in scheduling Plaintiff for Sunday shifts.

For the reasons set forth above, this Court concludes that Plaintiff fails to present evidence to establish the existence of element(s) essential to his religious discrimination and retaliation claims.

Accordingly,

**IT IS ORDERED**, that Defendants' Motion for Summary Judgment is **GRANTED**.

Date:  June 14, 2011

                                      s/PATRICK J. DUGGAN
                                      UNITED STATES DISTRICT JUDGE

Copies to:
Leonardo Jose Fields
4842 Washtenaw Avenue
Apt. C4
Ann Arbor, MI 48108-1485

G. Michael Meihn, Esq.

15